UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JACQUELINE MINION,

    Plaintiff,

                          Case No. 12-12128

v.

                          Hon. John Corbett O'Meara

EXEL, INC., *et al.*,

    Defendants.

_____/

**OPINION AND ORDER GRANTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Before the court is Defendant's motion for summary judgment, which was filed on February 6, 2014, and which has been fully briefed. Pursuant to L.R. 7.1(f)(2), the court did not hear oral argument.

**BACKGROUND FACTS**

Defendant Exel, Inc., is a supply chain management company that has a facility in Warren, Michigan, where it warehouses and ships parts to Chrysler's Warren assembly plant. Plaintiff Jacqueline Minion worked at Exel's Warren warehouse beginning in 2005. In 2010, she became a second-shift hi-lo (forklift) operator. Non-supervisory employees like Minion are represented by the Teamsters, Truck Drivers Local Union No. 299.

David Streber is the General Manager of the Warren facility, David Cavender was an Operations Manager, and Thomas VanNocker was the Human Resources Director. Minion's union steward was Gerald Fudge.

Defendant contends that Minion was disciplined or counseled several times during her employment for failing to follow work rules, failing to properly inventory parts, and excessive absenteeism. On April 3, 2009, Exel issued Minion a final written warning for failing to immediately report a workplace injury or incident. See Def.'s Tab C, Ex. 25. The warning states: "Ms. Minion alleges to have sustained an injury on 3/23/09, but failed to report the injury in a timely manner. This is a violation of safety rules and practices . . . . Final Written Notification will remain in force for 12 months. Any other rules or policy violations by Ms. Minion in this time frame may result in termination of employment." Id.

In August 2010, Minion was involved in a forklift accident with another employee, Matin Chowdery; neither employee reported the incident. According to Minion, both forklifts were "reversing at the same time and tapped each other. . . . There was no serious damage, anything done." Def.'s Tab C at 202-203. The incident came to light two weeks later when Chowdery complained of neck pain. Both Minion and Chowdery were terminated by Exel for failing to immediately

report the incident. See id. Their failure to report the incident was a violation of Exel's "Class Two" rule 9, which states that it is a violation to "Fail[] to report an injury or incident immediately, whether or not damage occurs." Def.'s Tab C, Ex. 4. According to Exel's work rules, "Class Two rule violations are extremely important. Due to the serious nature of these rules, violation is considered gross misconduct and is grounds for termination of employment on the first occurrence." Id.

Both employees filed a grievance and were reinstated, subject to a "Last Chance Agreement." Def.'s Tab C, Ex. 20. Minion's Last Chance Agreement, dated September 13, 2010, was negotiated between Exel and the union. The agreement provides:

> If, during a period of 18 months from the date of her reinstatement, Minion commits or engages in any offense that either has caused her to be disciplined in the past, listed in Article 10 of the current Collective Bargaining Agreement, or listed in Schedule "B" Rules/Regulations of the current Collective Bargaining Agreement, both Minion and the Union agree that she shall be terminated immediately without recourse to any agency, federal, state or municipal court, except as provided for in paragraph 4 below.

Id.

Around this time, in September 2010, one of Minion's co-workers, Lucinda McClendon, reported to Streber and VanNocker that Operations Supervisor Mike

McKenzie sent her a sexually explicit text message, asked her out, and made inappropriate advances at work. During the investigation of McClendon's complaint, Streber learned that McKenzie had also texted Minion. Streber and VanNocker interviewed Minion, who told them that McKenzie had asked her out via text message. Based upon McKenzie's inappropriate text messages to McClendon and Minion, Exel terminated his employment in September 2010.

In January 2011, McClendon filed an EEOC charge, alleging sexual harassment from her supervisor and co-workers. On January 13, 2011, Streber and VanNocker interviewed McClendon about her allegations. McClendon confirmed that McKenzie was the supervisor referenced in her charge, but refused to provide the names of the co-workers who allegedly harassed her and refused to provide details of the harassment. Def.'s Tab L at ¶ 10.

On January 14, 2011, McClendon and Minion complained of sexual harassment to their union steward, Gerald Fudge, but would not say who was harassing them. In response to McClendon's allegations, Streber and VanNocker interviewed several hourly and managerial employees, but none reported witnessing inappropriate conduct. Id. at ¶¶ 11-12.

On January 19, 2011, Fudge asked Streber, on Minion's behalf, for a meeting regarding sexual harassment training. Streber agreed to meet with Minion

and arranged to have VanNocker present on January 21, 2011. During a phone call on January 19, Minion asked Streber, "if I have an issue and it's still going on out on the floor in the working environment?" Streber replied: "Then you need to come forward and we'll address it." Def.'s Tab C at 303-304.[1]

Minion also had a conversation on January 19, 2011, with Eckhardt, Fudge, and Cavender. Cavender told Minion, "if there was something you had an issue with, Jackie, and you came to me and gave me explicit details as to what was happening, then I would certainly tackle that situation and try to rectify it." Id. at 305-306. Cavender also told Minion that "the meeting in the break room about sexual harassment was in the planning stages. . . VanNocker can't be here until Friday and that's where it's heading from there." Id. at 306. Minion then told Cavender that her name was written in the men's restroom: "Jackie fucked 5 niggers and a white boy." Minion alleges that Cavender flippantly stated that "I hope I'm not the white boy." Cavender then went to the men's restroom and blacked out the comment about Minion with a marker. Def.'s Tab C at 326-28.

On January 21, 2011, Streber and VanNocker met with Minion and Fudge as Minion requested. According to Streber, most of the meeting was spent discussing

---

[1] Minion recorded several conversations that she had with her managers at Exel. The court has not been provided with the transcripts; however certain conversations were detailed in Minion's deposition. See, e.g., Def.'s Tab C.

Minion's complaint that no sexual harassment training occurred after McKenzie was fired. Def.'s Tab L at ¶ 17. In response, Streber stated that he did not have reason to believe that the harassment went beyond the McKenzie incident. See Def.'s Tab C at 312-15. Minion complained that "do you know it's guys out there right now talking about my behind when I bend over and dropping like it's hot and how much money and all this stuff?" Id. at 311. VanNocker responded: "Jackie, you told me that you got information for us and I would like to hear it. I would like to be able to stop to identify the people who are doing, taking necessary actions so they stop so none of this happens to you or anyone else. . . . Help us fix it now." Id. at 315-16. Minion refused to identify anyone or provide other information regarding the alleged harassment. Id. at 429-30; Tab L at ¶ 18.

On January 25, 2011, Minion was unloading a trailer when a light box fell on her hand. She did not report the incident until the following day, when she asked her supervisor, Jon Eckhardt, "if I smashed my finger and hurt it, do I have to fill out an incident report?" Def.'s Tab C at 319. Eckhardt asked Minion, "did you smash your finger or did you not smash your finger?" Minion replied, "not crush it, you know, just hurt it. Do I have to fill out an incident report?" Id. at 321. Eckhardt asked her, "Well, why didn't you report it yesterday?" Id. at 323. Minion stated that it "didn't hurt or nothing," but that "it's just a little bit sore. It was a

light featherweight box." Id. at 323-24. Minion refused medical treatment for her hand. Eckhardt prepared an incident report. See Def.'s Tab F.

Exel terminated Minion's employment the following day, January 27, 2011, because she failed to immediately report the incident, in violation of her Last Chance Agreement. See Def.'s Tab L, ¶ 20. Although Minion filed a grievance regarding her termination, she did not attend the grievance meeting. Her grievance was denied, and she did not pursue it further or seek arbitration under the collective bargaining agreement.

On the same day that Minion was terminated, Exel conducted mandatory training on the company's workplace harassment policy. See Def.'s Tab G.

## LAW AND ANALYSIS

### I. Standard of Review

Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). When reviewing a motion for summary judgment, the facts and any reasonable inferences drawn from the facts must be viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The party opposing summary judgment, however, must present more than a "mere scintilla" of evidence; the evidence must

be such that a reasonable jury could find in favor of the plaintiff. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

## II. Discrimination

Plaintiff contends that Defendant discriminated against her in violation of Title VII, which prohibits employers from discriminating against an employee on the basis of race and sex. See 42 U.S.C. § 2000e-2. A plaintiff may establish a prima facie case under Title VII by presenting direct evidence of discrimination or by presenting circumstantial evidence satisfying the McDonnell-Douglas burden-shifting paradigm. See, e.g., Kline v. Tenn. Valley Auth., 128 F.3d 337, 348 (6th Cir. 1997). Plaintiff does not present direct evidence of discrimination here. Accordingly, Plaintiff must satisfy the following elements: (1) she is a member of a protected group; (2) she was subject to an adverse employment action; (3) she was qualified for the position; and (4) she was treated differently than similarly situated employees outside the protected group. Russell v. University of Toledo, 537 F.3d 596, 604 (6th Cir. 2008) "[T]o be deemed 'similarly-situated,' the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." Mitchell v.

Toledo Hosp., 964 F.2d 577, 583 (6th Cir. 1992).

Once a plaintiff has established a prima facie case, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the challenged employment action. Russell, 537 F.3d at 604. If the employer satisfies its burden, the plaintiff must demonstrate that the employer's reason is a pretext to hide unlawful discrimination. Id. To establish pretext, a plaintiff must show "either (1) that the proffered reasons had no basis *in fact,* (2) that the proffered reasons did not *actually* motivate [the employment action], or (3) that they were *insufficient* to motivate [the employment action]." Id. (citing Manzer v. Diamond Shamrock Chems. Co., 29 F.3d 1078, 1084 (6th Cir. 1994)).

Plaintiff contends that she was terminated based upon her sex and race. Plaintiff has failed to present a prima facie case of discrimination, however, because she has not demonstrated that she was treated differently than any similarly situated male or white co-worker. Plaintiff has not identified another co-worker who violated a Last Chance Agreement and was not terminated. Although Plaintiff alleges that an employee named "Derrick" violated his Last Chance Agreement and was not terminated, she has failed to provide concrete facts substantiating this bare allegation. See Def.'s Tab C at 349. Nor has she provided any facts that would allow the court to determine whether she is similarly situated

to "Derrick."

In addition, even if Plaintiff could present a prima facie case, she cannot demonstrate that Defendant's articulated reason for her termination is pretextual. Plaintiff argues that she was not required to report the incident where a box fell on her finger because there was no injury, no medical attention necessary, and no work time lost. However, Defendant consistently required an incident report under the same circumstances; for example, Plaintiff and a co-worker were both terminated after they failed to report that their forklifts "tapped" each other and there was no damage done. See also Def.'s Tab C at Ex. 4 (grounds for termination include "[f]ailure to report an injury or incident immediately, whether or not damage occurs."). Plaintiff also suggests that she did not actually violate the Last Chance Agreement because she did not fail to report a "serious injury." To the contrary, Plaintiff did violate the Last Chance Agreement because she "commit[ed] or engage[d] in [an] offense that . . . caused her to be disciplined in the past," that is, she failed to report an incident.

Because Plaintiff can neither present a prima facie case or demonstrate pretext, the court will dismiss her discrimination claims.

**III.    Harassment**

To bring a successful hostile work environment claim, based upon sexual or racial harassment, a plaintiff must show "(1) she belonged to a protected group, (2) she was subject to unwelcome harassment, (3) the harassment was based on [race or sex], (4) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment, and (5) the defendant knew or should have known about the harassment and failed to act." Waldo v. Consumers Energy, 726 F.3d 802, 813 (6th Cir. 2013) (citing Williams v. CSX Transp. Co., 643 F.2d 502, 511 (6th Cir. 2011)).  In determining whether the harassment was sufficiently "severe or pervasive" to create an abusive working environment, courts must look at "all the circumstances," including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993).

Here, Plaintiff alleges the following: (1) she received unwanted text messages from Mike McKenzie; (2) after reporting McKenzie (and he was terminated), male coworkers made comments such as "You are probably good at oral sex"; "You probably wanted it from your former supervisor;" "I know your breasts are nice and juicy – I would love to suck on them;" and "How much would

it cost me to fuck you?"; (3) a statement was written on the men's bathroom wall that "Jackie fucked five niggers and a white boy" and "all first shift women are whores"; (5) regarding her complaint about the bathroom writing, Cavender stated, "I hope I'm not the white boy"; (6) male coworkers were hostile and "touchy-feely" toward her; (7) a coworker slapped her on the buttocks; and (8) she did not each lunch in the break room because of the "explicit" conversations involving male employees.

Without analysis, Plaintiff simply declares that the above conduct was "sufficiently severe and pervasive." Pl.'s Br. at 19. Plaintiff has not specified the length of time or frequency of the harassing conduct, however, nor has she presented evidence the she subjectively considered it severe or pervasive enough to interfere with her work performance. See Hall v. Sky Chefs, Inc., 784 F. Supp.2d 811, 824-25 (E.D. Mich. 2011) (Rosen, C.J.) (dismissing harassment claims where the plaintiff failed to show she subjectively considered the offensive conduct as "interfering with her work performance, altering the conditions of her employment, or giving rise to a hostile or abusive work environment").

Additionally, Plaintiff has not shown that Defendant knew or should have known about the harassment and failed to act. After Plaintiff (and McClendon) reported McKenzie's inappropriate text messages, Defendant terminated

McKenzie's employment. Plaintiff admittedly did not tell her supervisors about the more specific and egregious comments she alleges here; moreover, when she generally complained about being harassed or "touchy-feely" coworkers, she refused to provide further details or names. Nonetheless, Plaintiff's supervisors expressed their desire to assist her. Consistent with Plaintiff's request, Exel held sexual harassment training for all employees. Defendant also investigated McClendon's generalized allegations of harassment after it received her EEOC charge, and did not discover any inappropriate conduct. Although Plaintiff alleges that her supervisors did not take her allegations seriously, it is not clear what further action Plaintiff believes should have been taken, given her refusal to provide information to assist Exel in investigating her allegations.

Viewing the totality of the circumstances, Plaintiff has not set forth sufficient evidence to create a prima facie case of sexual or racial harassment. Indeed, Plaintiff has not presented any evidence whatsoever of harassment based upon race. The court will dismiss Plaintiff's hostile environment claims.

**IV.    Retaliation**

In order to establish a prima facie case of retaliation, a plaintiff must show that she (1) engaged in activity protected by Title VII; (2) her employer knew she engaged in the activity; (3) her employer took adverse action against her; and (4)

there is a causal connection between the adverse action and the protected activity. Upshaw v. Ford Motor Co., 576 F.3d 576, 588 (6th Cir. 2009). Once a plaintiff establishes a prima facie case, the employer may articulate a legitimate non-retaliatory reason for the adverse action; the plaintiff then has the burden of demonstrating that the employer's reason is pretextual. Id. at 589-90.

Plaintiff contends that she was terminated because she made complaints of sexual harassment, threatened to file an EEOC charge, and did file a charge. Other than temporal proximity, there is no evidence of a causal connection between Plaintiff's termination and her complaints/charge. Defendant states that Plaintiff was fired because she violated her Last Chance Agreement. As with her discrimination claims, Plaintiff has failed to demonstrate that Defendant's reason is pretextual. There is no evidence, for example, that her supervisors harbored animus based upon her complaints or EEOC charge. Rather, the undisputed evidence is that Plaintiff's supervisors expressed a desire to remedy the alleged harassment. Def.'s Tab C at 303-306, 311-16. Moreover, one of Plaintiff's coworkers, McClendon, who also filed an EEOC charge, remains employed by Exel. The court will dismiss Plaintiff's retaliation claim.

**ORDER**

IT IS HEREBY ORDERED that Defendant's February 6, 2014 motion for

summary judgment is GRANTED.

s/John Corbett O'Meara

United States District Judge

Date: April 21, 2014

    I hereby certify that a copy of the foregoing document was served upon counsel of record on this date, April 21, 2014, using the ECF system.

s/William Barkholz

Case Manager